## HUNTSVILLE BANK *versus* McGEHEES, Ex'ix.

*The Act of 1823 declaring a forfeiture of the charter of the Huntsville Bank to ensue from a failure to pay specie for its notes, did not take from the Bank the right to sue in its corporate capacity.*

The plaintiff in error brought an action of debt in Limestone Circuit Court, against the defendant, to recover the amount of a promissory note. The defendant plead in abatement, that the charter of the plaintiff had expired, and that the "Huntsville Bank," in its corporate capacity, could not maintain an action. On this issue there was a verdict in favor of the defendant. This point, as also others, noticed in the opinion of the Court, were here assigned for error.

*Hopkins*, for the plaintiff's in error.—The original charter of the Bank gave the right to the stockholders to use the corporate name for two years after the expiration of the term of the incorporation, for the purposes of bringing and maintaining suits, settling the accounts and selling the property of every kind of the corporation. The enjoyment of this privilege, after every other should cease and the term of the charter itself expire, was secured. The powers of the corporation whilst the charter endured, were as ample without as with this privilege. This could be of no use and could not be exercised until the corporation ceased to exist. The act of 1823 could cause a forfeiture of the charter only before the expiration of the term of incorporation; but does not affect any privilege which the charter gave after the corporate powers and the charter itself might end. The

stockholders have, in the event of their being deprived of the charter by a judgment of forfeiture, obtained according to the course of the common law, the same right to bring and maintain suits in the corporate name, as they would have after the charter had expired by its own limitation. A forfeiture has not a more destructive effect upon the powers of a corporation than the expiration of the charter would have; and the last event could not disable the stockholders from suing in the corporate name for two years after it might occur. The right to sue does not depend on the continued existence of the corporation. It was given for the whole term allotted to the corporation, and two years beyond the longest period the charter could endure. The defendant relies on the act of 1823, and the proclamation of the Governor which it directed, to shew the charter has been forfeited, and that the plaintiff is without capacity to maintain this action. This statute amended the original charter, and did so with the consent of the stockholders. The amendments consisted in making the refusal or failure of the Bank to pay, on demand, specie for its notes, a cause of forfeiture of the charter, and giving power to the Governor to issue his proclamation declaring the forfeiture for such cause. But the forfeiture could not take effect immediately after the proclamation might be issued. The statute secures to the stockholders all their corporate powers for three years after the date of such proclamation. The effect of a forfeiture under the statute, will take place when the corporate powers may terminate. If the object of the three years allowed by the statute, were expressed to enable the stockholders to bring suits in the corporate name,

instead of being to enjoy all their corporate powers, it would not be denied that the legislature intended the three years after a forfeiture by proclamation, as a substitute for the two years allotted by the charter after the expiration of the term of incorporation.— But as the object of the three is different from that of the two years, the benefit of both may be consistently enjoyed. If the forfeiture of the charter for any cause, which, independently of the statute of 1823, would be an adequate one, could not deprive the stockholders of the right to sue in the corporate name during the whole term of incorporation, and two years afterward, a forfeiture, that is the consequence of the cause to which that statute exposed the charter, does not divest them of the privilege.— *Ala. Dig.* 39, *Sect.* 10.

The holder of a bond, who acquired it by a transfer by delivery without endorsement, has a right to prosecute a suit on it for his use, in a case in which the nominal plaintiff dies, after the action was commenced, but before judgment. Would he not have a right to bring a suit for his benefit in the name of the obligee after the death of the latter? The latter case is within the mischief, for which a remedy is afforded by statute, and is therefore by an equitable construction within the meaning, although it is without the letter of the statute.—*Ala. Dig.* 70, 465 —6 *Bac. Abr.* 383, 385, *to* 388.

If the holder would have a right to an action in the latter case, Pope, for whose use this suit was brought, is entitled to it. He received a transfer of the bond by delivery within three years after the Governor issued his proclamation. The transfer was accompanied by a deed from the corporation, that

conveyed to him this and every other interest, which belonged to it and declared the trusts to which he should hold all subject. He has the same right to bring an action after the dissolution of the corporation as the transferee of an individual has, after the death of one from whom he received the transfer.

But the right of the corporation to sue or to do any other act, which the charter authorised, was not impaired by the statute of 1823.. This act is unconstitutional and void. It provides a mode, in which the Bank may be deprived of its charter without allowing to the corporation a trial by jury, or any opportunity to make defence, and gives to the Governor *judicial* in addition to the *executive* power. The legislature did not intend, when they enacted this statute, to exercise the power to establish Courts inferior to the Circuit Courts, and to appoint the Governor a Judge of an inferior court. If they intended to do so, such an act is forbidden by the constitution. The Constitution prohibits the union in the same office of judicial and executive power— *Ala. Dig.* 917, *article* 2d, *and sect.* 2, *of the Constitution.*

That the power conferred by the act is judicial, no one can doubt. It declares what shall be the effect of a failure to pay specie; prescribes what shall be sufficient testimony of this fact; authorizes the Governor to ascertain it, and in the event of his believing, from the evidence, that the fact exists, requires him to deprive the corporation, by his proclamation of its rights. This is precisely the power which Courts exercise, after the facts of a case have been ascertained by a jury. Every right, whether it depend upon the common law or statute, must be

supported, if in controversy, by evidence of the facts upon which it rests. The effect of the facts the law has declared. They are ascertained in the mode which the law has prescribed, and it is the duty of a Court to see that facts are proved by competent testimony, and if they are to pronounce, not its own, but the judgment of the law, such judgment is the effect allowed by law to the facts.

The assent of the corporation to the statute is immaterial and does not relieve it from the objection. The assent of all the people in the State could not enable the legislature to do what the Constitution prohibits. If the legislature were now to enact that every collector of taxes hereafter appointed, should, as a condition precedent to the exercise of the employment, make, together with his securities, a written declaration of assent to a statute, which required the Governor, if it appeared from the certificate of the Comptroller that any collector had failed, on the demand of the Comptroller, to pay the taxes in his hands into the Treasury, to render a judgment for default against such collector and his securities, would not the statute be unconstitutional? Could the assent save it from merited condemnation? It would be no support to a judgment obtained in virtue of such a statute, to say the collector was bound by a legal obligation to pay the sum for which the judgment was rendered. This could be said truly to most persons of the effect of claims before suits are brought on them, upon which Courts afterward render judgments. The existence of obligation when it is asserted by one party and denied by the other, can be ascertained and fixed by the exercise of judicial power only. In the case which has been sup-

posed, the facts necessary to make a collector and his securities liable would be—was he appointed to the office—did he and his securities make the bond—did he collect the money and fail to pay it over. If these facts can be ascertained and their legal effect declared by a Governor's proclamation with the force of a judgment, the effect of facts necessary to fix an obligation on one individual in favor of another, may be also—if the legislature shall authorise it by a statute, which shall require all persons to submit by the terms of their contracts to the jurisdiction of this new tribunal. In what does the case supposed, differ from this? The Bank had rights as well vested by its charter and protected by the Constitution and laws of the land, as those of persons are. Amongst its most essential rights is that to the term of incorporation. The forfeiture of this right must be founded upon facts, the effect of which destroys it. Such facts can be ascertained in that mode only, in which those are that affect the rights of persons. The legal effect of such facts can be declared by a Court only. An obligation of the Bank in favor of others, like one on an individual, must be shewn by evidence. Did the Bank owe the note which was protested, or was it made by the corporation? This inquiry embraced facts and questions, which can be ascertained and settled no where else than in a Court. Did the Bank refuse to pay on the ground, that the holder was indebted to the corporation in a hundred times the amount of his demand? As to this fact the notary did not inquire, and had no authority to inquire. If the original charter of the Bank had given to the Governor authority to inquire into matter, which is by the common law a cause of for-

feiture, and power also, if he ascertained its existence, to adjudge the forfeiture, no one here would doubt the unconstitutionality of the authority. The statute of 1823 made the failure to pay specie a cause of forfeiture. Under the charter the failure had no such effect. But is not the inquiry into matter, to which the amendatory act allows that effect, confined as exclusively to the jurisdiction of Courts, as it would be, if made into a fact that would, according to the original charter, cause a forfeiture?

None need be alarmed for the consequences of a decision, that the statute is void. The capital of the Bank is too dispersed to be collected again. Some of it may be wherever the winds of Heaven blow. It has been exhausted in the payment of debts and in distribution amongst the stockholders. In January 1828, all the interests of the Bank were conveyed to a Trustee, to whom authority was given to close its concerns. If the operations of the Bank should be hereafter renewed, a judgment of forfeiture for non-user could be obtained. But the stockholders are satisfied with its present repose, and would not disturb it if they could. They remember that whilst it was in operation, it received no credit for the good it did, and was charged with many of the evils which it did not cause. Their consciousness of the integrity, with which they administered the affairs of the institution, does not make them willing to afford, by a renewal of its operations, another pretext for slander to assail them. They assert the existence of the corporation for the sole purpose of enabling the Trustee to recover the debts, which are justly due to it. Allow their Trustee to do so, and they are as willing as any other one can

JANUARY TERM, 1832.

313

HUNTSVILLE BANK vs. M'GEHEE's, ex'ix.

be, that the Bank "may sleep the sleep that knows no waking."

PERRY, J.—This was an action of debt, the relative situations of the parties being the same in the Court below as in this Court. The defendant filed a plea, in which she alleged, that before the commencement of this suit the plaintiffs had forfeited their charter, and had ceased to exist as a body corporate, and were incapable of prosecuting any suit in their corporate capacity. The plaintiffs replied, that they were authorised by law to sue for and maintain all necessary actions for the recovery of debts in their corporate capacity, according to their charter. The defendant rejoined and took issue upon the plaintiffs replication. The cause upon the issue was submitted to a jury and a verdict rendered for the defendant. Pending the trial, a bill of exceptions was taken, which discloses that the plaintiffs produced and read to the jury the note executed to them on the fifth day of February, 1822, and upon which the action was brought, and also read the act incorporating the said Bank On behalf of the defendant, was offered as evidence, a certified transcript of the records of the office of the Secretary of State, signed by him with the seal of the State annexed, dated the first day of February, 1825, by which it appears, that the stockholders of said Bank had assented to the provisions of an act passed by the Legislature, December the 31st, 1823, to amend the charter of said Bank, and transmitted an expose of the condition of said Bank, as required by said act, and the Governor's proclamation declaring the charter of said Bank forfeited in consequence

40

of a violation of said act, in not paying specie for a note issued by said Bank, which was presented for payment on the 16th day of December, 1824, and regularly protested for non-payment. The plaintiffs objected to the testimony going to the jury, but were overruled by the Court. The defendant then read as evidence, the act of 1823 to amend the charter of said Bank. The plaintiffs then requested the Court to charge the jury, that the writing purporting to be the Governor's proclamation, was not sufficient evidence, unless the same were proved to have been published, to authorise a verdict for defendant; which instruction was refused. The plaintiffs now assign for error:

First—That the Court erred in not excluding the evidence, offered by the defendant, from the jury.

Secondly—In refusing the instruction asked for; and,

Thirdly—That the issue was immaterial.

The first and second assignments may well be considered together, as they involve the disability of the plaintiffs to sue, and there can be no doubt but the Court erred in refusing to give an opinion as to the law upon the facts, when it was requested to do so. Such a refusal leaves the law to be determined by the jury, or at least it is calculated to lead them into error, by supposing that the law is on the other side. The Court then should have given the instruction asked for, and left the jury to decide upon the evidence. The refusal then, to give the charge asked for, being equivalent to an opinion that the law was with the defendant, I will proceed to shew that the plaintiffs were entitled to sue at the time this suit was commenced. The act of 1823, to amend

the charter of said Bank, in the 2d section, enacts "that if at any time after the first day of August next, it shall be ascertained, by note regularly protested for non-payment, that said Bank has refused to pay specie for any note it has issued or may issue, then, and in that event, the charter of said Bank shall be forfeited, and the Governor is required to issue his proclamation to declare it null and void." The third section provides, that in the event of a forfeiture of the charter of said Bank being incurred under the provisions of this act, the stockholders thereof shall still continue to enjoy all their corporate powers unimpaired, for the term of three years from the date of the proclamation declaring said forfeiture. In the 10th section incorporating said Bank, *Digest, page* 39, it will be found that, notwithstanding the expiration of the term for which the said corporation was created, it should be lawful to use the corporate name, style and capacity, for the purpose of suits for the final liquidation and settlement of the affairs and accounts of the corporation, and for the sale and disposition of their estate, real, personal, and mixed, for two years after the expiration of the said term of incorporation. The act then of 1823, from the best construction I have been enabled to give it, only shortened the period, upon certain contingencies, which the charter of the Bank should run; and from the act referred to, and the date of the Governor's proclamation, it is evident that a forfeiture of the charter did not take place until the first day of February, 1825, and the act referred to, continued their corporate powers under certain restrictions for three years thereafter. The question then arises, at what time the corporation

316      CASES DETERMINED

HUNTSVILLE BANK vs. M'GEHEE'S ex'ix.

ceased to exist; and I will here admit that the question would be beyond disputation, but for that part of the act of 1823, which continues their corporate capacity for three years after a forfeiture of the charter of said Bank, by which it is evident that the legislature intended the corporation to exist and continue the time designated, for all the purposes of banking, except discounts. So long then as the charter authorised the Bank to do banking business, it existed as a corporation, and at the expiration of the time limited, at which the corporation should cease to do banking business in its corporate capacity, then the corporation ceased to exist, and it would have to resort to the 10th section referred to, in order to enforce the collection of its debts, which seems to have been unimpaired by the act of 1823, to amend the charter of said Bank. The act then of 1823, amending the charter of said Bank, and the 10th section of the original charter not being in conflict, they may well stand in *pari materia,* and be construed as such, which would give the Bank two years after the expiration of the three, from the date of the Governor's proclamation, to commence suits, &c. The evidence was therefore proper under the issue, and the refusal to give the charge asked for, error.

As to the third assignment, that the issue was immaterial, it is believed that that assignment is not well assigned. An issue to be immaterial must be such as no judgment could be rendered upon it. The plea then was a plea in abatement as to the capacity of the plaintiffs to sue: upon that fact being found, the writ would have been abated, or being found for the plaintiffs, a *respondeas ouster* would have been awarded.

A majority of the Court are therefore of opinion, that the judgment be reversed and cause remanded.

The other cases between the same parties are to abide this decision.

COLLIER, J. dissented from the opinion delivered by a majority, remarking, that he expressed no opinion upon the constitutionality of the act of 1823.

TAYLOR, J. and WHITE, J. not sitting.